This suit originated as a demand on three promissory notes: One for $150 signed and executed by H.E. Hutchinson and B.F. Hyde, another for $125 signed and executed by H.E. Hutchinson alone and a third for $101.55 also signed and executed by H.E. Hutchinson alone. All three notes bear interest at 8% and provide for 10% attorney's fees in case of suit. They are all three annexed to the petition. The first mentioned note for $150 is dated September 7, 1933, and is payable December 7, 1933. It bears interest from maturity and the demand is for interest from that date. The second note, the one for $125, is dated September 18, 1933, payable November 30, 1933 with interest from maturity and the demand is for interest likewise from that date. The last note, or the one for $101.55, is dated July 25, 1933, payable December 11, 1933 with interest also from maturity and the demand is for interest from that date. This last note is subject to a credit of $24.44 leaving a balance of $77.11.
The allegations of the plaintiff's petition are those usually contained in a petition in a suit of this character, the prayer being for judgment on each of the three notes for the amounts claimed to be due on each with interest as stated, and for 10% of the aggregate amount of principal and interest as attorney's fees. With regard to the note for $150 judgment is prayed for against both the defendants Hutchinson and Hyde, in solido.
The defendant Hutchinson answered, admitting his signature to the note for $150 but claiming that the same has been paid in full since the suit was filed. With regard to the note for $125 he pleads that the same was given without consideration, setting out the following facts in connection therewith: He avers that he was going to Baton Rouge with the intention of buying horses at an auction sale and not being sure of the amount of money he would need he made arrangements with the Bank which took and held the note at that time that the proceeds would be placed to his credit if he happened to need more funds than he had available and would have to draw against his account to meet the same. If he did not need this additional credit the note was to be returned to him. He alleges that he did not need the money and that when he returned from Baton Rouge and went to get his note out of the Bank he was told that the Bank had been placed in liquidation, that the Bank Examiner was in charge and it was impossible to return his note to him. With regard to the note of $101.55 on which there is a balance due, he claims that the Tangipahoa Bank Trust Company from which plaintiff acquired the note long after maturity, failed and was placed in liquidation after its maturity and that at the time it became due he had more than $300 on deposit in that bank and he is therefore entitled to offset the amount with his said deposit.
It appears from a motion subsequently filed in the record that the defendant Hutchinson was right concerning the payment of the note for $150 which had been signed by himself and B.F. Hyde and the suit was dismissed with regard to that note. After trial of the case on the demand for the two remaining notes there was judgment in favor of the plaintiff for the balance due on the note of $101.55 and judgment in favor of the defendant dismissing the plaintiff's suit on the note for $125. The defendant appealed from the judgment but seems to have abandoned his defense made on the plea of offset or compensation and the only remaining issue in the case, as we view it is his plea of failure of consideration on the note of $125.
This note was duly identified, as well as the note for $101.55 by J.W. Fanally, Special Agent in charge of the Bank for the State Banking Commissioner as being held by the plaintiff and outstanding at this time. When they were sent out for acknowledgment by the plaintiff, the defendant refused to give plaintiff's agent any acknowledgment and has never admitted them to be due and outstanding. Mr. Fanally does testify however that the payment of $24.44 applied on the note for $101.55 was the proceeds of a dividend check in the liquidation of the Bank, which check was duly endorsed by the defendant and applied on *Page 425 
August 20, 1935. He did not see the defendant endorse the check but it is shown by the testimony of Mr. Hutchinson that he admits the endorsement and that he admits his signature on both notes as well. This constituted the proof submitted by the plaintiff in chief.
Mr. Hutchinson testified in his own behalf and he related the manner in which he claims the note of $125 was executed by him. As alleged in his answer he explains that it was to be used only in case he would buy horses at the auction sale he was going to attend and he states further that the note was to be endorsed by his brother named Fred, which endorsement was never completed. He states that he never drew against the account and that a day or two after the Bank closed he went to get his note but found the Bank Examiner had taken charge and he could not get it.
In support of his defense he called Mr. J.H. Dickenson as a witness. This witness' exact position with the Bank is not shown but evidently he had some connection with it at the time this note was executed. He doesn't recall the circumstances of its execution and states that if he had the records of the Bank before him he might be able to identify them. From the Bank's numbers which appear on the face of the note he would think that it was carried "as coming due and payable", as it is expressed. He states that the Kentwood Bank, the original holder of the note, never did pledge the note to the plaintiff herein but he explains that that Bank went out of existence and was succeeded by the Tangipahoa Bank Trust Company on January 4, 1934.
Mr. T.W. Kent, an official of the Kentwood Bank, was also called by the defendant as a witness and stated that he recalls very well having approved a loan on the conditions explained by him. He did not handle the loan afterwards. He is not sure but does not believe that credit was ever extended on the note. He recalls Hutchinson coming to ask him for the note and that at that time he told him that all notes had been turned over to the State Banking Department and that he could get whatever information he desired by going to Hammond. Mr. Kent states that the note being stamped with the Bank's numbers doesn't necessarily mean that credit was advanced. He also states that it was the policy of the Bank to ask for an endorsement on all notes but sometimes they did not get it.
The case was then laid over for a few days in order that the Bank records might be produced and when they were Mr. Fanally again took the stand as a witness and testifying from the records stated positively that they showed that the defendant, on May 31, 1933, discounted his note of $125, due three months after date or on August 31, 1933. He got credit according to the records of the Bank for $122.50; the discount amounting to $2.50. The records further show that on September 18, 1933 this note which had been discounted appears as a debit on the cash book of the Bank, the same having been paid or renewed, and on the same page of the records it is shown that the defendant executed a note for a like amount due November 30, 1933. It is to be noted that the note due August 31, 1933 was not cancelled prior to September 18, 1933 and that the three months from August 31, 1933, would make the maturity date November 30, 1933, which is the date of maturity of the note in controversy. Mr. Fanally frankly admits that he did not make the records from which he is testifying but the only conclusion he can draw from them is that the note presently sued on was a renewal of the obligation which the defendant undertook at the time he first executed the note and with what other evidence there is on this, the only issue that is before the Court, we cannot say but what we agree that he was correct in his conclusion.
The defense set up is one of failure of consideration. It being an affirmative and special defense, the burden of proof rested on the defendant to support it. We are not favored by the district judge with any reasons why he rejected the plaintiff's demand on this note but our appreciation of the evidence leads us to a different conclusion than that reached by him and we find ourselves constrained to reverse the judgment in that respect.
For the reasons herein stated it is ordered that the judgment appealed from, in so far as it rejected the plaintiff's demand on the note for $125, be and the same is now set aside, annulled and reversed and it is further ordered that there be judgment in favor of the plaintiff for the full amount of the said sum of $125, with interest at 8% from November 30, 1933, and 10% on the aggregate amount of both principal and interest, as attorney's fees, and that as otherwise, the judgment be affirmed, defendant to pay all costs. *Page 426